IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

--------

No. 99-20586

--------

UNITED STATES OF AMERICA,

Plaintiff,

versus

AMOCO CHEMICAL CO.; ET AL,

Defendants,

BFI WASTE SYSTEMS OF NORTH AMERICA,

Defendant - Appellant,

MONSANTO COMPANY; ATLANTIC
RICHFIELD COMPANY,

Defendants - Appellees.

--------

Appeals from the United States District Court
for the Southern District of Texas

--------

May 15, 2000

Before REYNALDO G. GARZA, HIGGINBOTHAM, and BENAVIDES, Circuit
Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

BFI Waste Systems of North America ("BFI") appeals the
district court's order requiring it to execute a trust agreement
agreeing to a specific share of the remediation costs of a
Superfund site. Finding that neither an amended consent decree
between the United States and BFI nor previous trust agreements
bound BFI to sign the new trust agreement, we VACATE the district
court's order. We hold, however, that BFI is obligated by the
terms of the consent decree to enter into a trust agreement with

the other settling defendants in the action.  On remand, if the parties cannot reach an agreement as to their respective cost allocations, the district court is empowered by the terms of the consent decree to resolve that dispute.

I

This appeal arises out of a suit brought under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA")[1] in 1989 by the United States against several defendants.  The government sought remediation of the Brio Superfund Site outside Houston, where various parties had processed styrene tar.  The defendants agreed to clean up the site, and in 1991, the district court entered the first consent decree.  The decree held the settling defendants jointly and severally liable for remediation costs and contemplated either biological treatment or incineration of the site.  In addition, the defendants negotiated among themselves for the share of the costs each party would bear, memorializing this agreement in a document called the "Brio Site Trust Agreement."  The government played no role in setting those shares.

After the defendants had begun work on an incinerator facility, community concerns and other issues caused them to ask the government to consider a new solution.  The government studied the matter, during which time the defendants operated under an

---

[1] See 42 U.S.C. § 9601 et seq.

2

amended interim trust agreement. When the government agreed to containment remediation in 1997, the defendants began drafting a new consent decree and trust fund agreement.

Although BFI participated in changing the remedy and in working out the new consent decree, in March 1998 it stated that its initial allocation of costs would not be acceptable for the new project. BFI claimed that it had originally agreed to pay a higher percentage of costs because its tar possibly contained a contaminant that would have made incineration more costly. This factor did not apply to a containment remedy.

BFI subsequently executed the amended consent decree but not the trust agreement. It again advised the other parties, none of whom had yet signed the amended consent decree, that it would not sign the trust agreement in its current form. The other parties nevertheless executed the amended consent decree, possibly at the insistence of the government.

In February 1999, two of the other defendants, Monsanto Company and Atlantic Richfield Company (collectively, "Monsanto"), filed a motion to require BFI to sign the amended trust agreement. The district court ordered BFI to execute the trust agreement based on language in the amended consent decree and the court's belief that the trust agreement had been appended to the consent decree. After an unsuccessful motion for reconsideration, BFI appealed.

II

BFI's obligation to sign the amended trust agreement turns on the terms of documents it did execute: the amended consent decree and prior trust agreements.[2] The court is empowered to enforce the terms to which a party has agreed.[3]

Monsanto argues that BFI's execution of the amended consent decree bound it to the terms of the trust agreement. This contention relies on two provisions of the amended consent decree. One provision requires that the settling defendants sign an amended trust agreement:

> The Settlers shall present to EPA [the Environmental Protection Agency] for approval concurrent with this Amended Decree a signed amended Brio Site Trust fund which shall be amended to confer upon the Trustee all powers and authority necessity to fulfill the obligations of the Trustee . . . The Trust Agreement shall instruct the Trustee to use the money in the Brio Site Trust Fund: (1) to pay the contractor(s) for the work described in Attachment B hereto, and (2) other proper expenses required to be paid by the Trustee. . . .[4]

This language obligates BFI to sign some trust agreement but does not lock it into any particular allocation. The government stated that its settlement with the defendants did not address their

---

[2]BFI's argument that Monsanto has no standing to bring an enforcement motion is without merit. A consent decree is enforceable by those who are parties to it, see Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 750 (1975), and Monsanto has contractual rights to take its disputes concerning the decree to the district court, see Amended Consent Decree ¶ XXII.

[3]See Vogel v. City of Cincinnati, 959 F.2d 594, 598 (6th Cir. 1992).

[4]See Amended Consent Decree ¶ XVIII.

4

shares of the costs, and the consent decree is silent on that issue.

The second provision defines "Amended Decree" as including those documents that the government requires the settling defendants to generate.[5] Because the government required only a trust agreement, not the specific trust agreement at issue here, the amended trust agreement is not made part of the amended decree.

Monsanto also contends that the 1991 trust agreement was integrated into the amended consent decree, making its terms binding on BFI. Monsanto points to the amended consent decree's definition of "Settlers" as "Those persons who are signatories to this Amended Decree . . . including the Brio Site Trust formed pursuant to . . . the original consent decree and continued under this Amended Decree."[6] This language, however, only provides that the members of the original Trust are included among the Settlers; it does not specify that the members' agreements among themselves will remain the same. In addition, prior to the signing of the amended consent decree, the settling defendants were operating under an interim trust agreement, not the original trust agreement. By its own terms, the interim agreement was to terminate when the amended consent decree was in place.[7]

---

[5]See Amended Consent Decree ¶ VI.A.1.

[6]See Amended Consent Decree ¶ VI.A.16.

[7]Even if the 1991 trust agreement continued to have force in interpreting the amended consent decree, its terms did not address

Monsanto argues that even if the documents BFI signed did not bind it to its original allocation, its course of dealing with the other settling defendants did.[8] Monsanto relies on United States v. Lightman,[9] another Superfund case involving an inter-defendant dispute. There, the defendant drafted a settlement offer, and some of the others then signed the agreement in reliance on the defendant's position.[10]

Here, BFI participated in the drafting and approval of the amended consent decree and remained silent during the first circulations of the proposed amended trust agreement. This behavior is distinguishable from that in Lightman. BFI made no affirmative statements regarding the trust agreement. BFI's initial silence did not bind it to the agreement, since silence normally does not establish acceptance of an offer.[11]

More importantly, none of the parties relied on BFI's continuing assent to its allocation share in signing the amended consent decree. Before any of the settling defendants signed the amended consent decree, BFI objected repeatedly and announced that

---

the containment remedy now contemplated.

[8]BFI's argument that the district court is without federal question jurisdiction is without merit. Monsanto seeks to enforce a consent decree settling a federal CERCLA action.

[9]988 F. Supp. 448 (D.N.J. 1997).

[10]Lightman, 988 F. Supp. at 451, 456.

[11]See State v. Triax Oil & Gas, Inc., 966 S.W.2d 123, 128 (Tex. App. 1998).

6

it would not sign the trust agreement. The parties appear to have signed the consent decree without resolving the trust agreement problem because the government required them to, not because they believed BFI had signed on to the allocation.[12]

Neither the terms of already-executed agreements nor BFI's course of dealing with the other defendants required BFI to execute the specific trust agreement at issue. BFI did agree in the amended consent decree, however, to enter into some trust agreement with its co-defendants.[13] This agreement obligates it to negotiate with the other settling defendants and agree to some system of allocation.

On remand, if the parties are unable to reach an agreement, the dispute resolution procedures of the amended consent decree empower the district court to resolve the dispute. The amended consent decree's dispute resolution clause allows the district court to resolve "any disputed issue" arising out of the decree,[14] a decree whose scope includes the creation of a trust agreement.[15]

---

[12]We are also not persuaded that the district court had the authority to amend the consent decree and impose the terms of the amended trust agreement. Although the court enjoys an equitable power to modify decrees to respond to changes in the law or facts, see System Federation No. 91 v. Wright, 81 S. Ct. 368, 371 (1961), no such relevant change occurred here to justify the amendment Monsanto desires.

[13]See Amended Consent Decree ¶ XVIII.

[14]See Amended Consent Decree ¶ XXII.E.

[15]See Amended Consent Decree ¶¶ XVIII & VI.A.1 (defining the amended decree as including "those documents that EPA requires

7

Having assented to the amended consent decree, BFI is obligated to continue its participation in the Brio trust, not to withdraw based on its hindsight that its liability may have been less than it estimated in 1991.

VACATED AND REMANDED.

---

Settlers to generate. . . .").